IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HENRY GETER**<br>2907 Colebrooke Drive<br>Temple Hills, Maryland 20748<br><br>   Plaintiff,<br>v.<br><br>**UNITED STATES GOVERNMENT**<br>**PUBLISHING OFFICE**<br>732 North Capitol Street<br>Washington, D.C. 20401<br><br>   Defendant. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW THE PLAINTIFF,** Henry Geter, by undersigned counsel, and for his Complaint against Defendant United States Government Publishing Office, respectfully states as follows:

### NATURE OF THE CASE

This is a civil rights action brought pursuant to 42 U.S.C. §2000(e) by the Plaintiff Henry Geter for violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Rehabilitation Act of 1973. In addition, Plaintiff alleges that he was the subject of retaliatory conduct.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332, 1343 and 2401(a)

2. Venue is proper in this district under 28 U.S.C. §1391 because the acts complained of took place in this judicial district.

## PARTIES

3. Plaintiff Henry Geter ("Mr. Geter") is now, and at all relevant times has been, an adult resident of the State of Maryland.

4. At all times relevant to this action, Defendant United States Government Publishing Office ("GPO") has been an agency of the United States Government with its principal place of business located in Washington, D.C. GPO is an "employer" within the meaning of Title VII of the Civil Rights Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff has exhausted his administrative remedies and has timely filed this Complaint.

6. On or about April 10, 2014, GPO removed Mr. Geter from his position as a Motor Vehicle Operator, allegedly for a failure to possess a valid commercial driver's license and an alleged failure to perform the essential functions of his position.

7. On May 5, 2014, Mr. Geter timely filed an appeal challenging his removal and asserted affirmative defenses of disability discrimination and reprisal for his prior EEO activity. Specifically, he contended that GPO removed him in reprisal for filing an EEO complaint and a Board appeal challenging his prior removal and also asserted that GPO denied him a reasonable accommodation in the form of a reassignment to a light-duty position and subjected him to disparate treatment based on his disability.

8. On December 31, 2014, the MSPB issued its Initial Decision affirming GPO's actions.

9. Mr. Geter filed a Petition for Review challenging the Administrative Judge's decision.

10. On or about July 15, 2015, MSPB entered its Final Order.

11. On August 12, 2015, Mr. Geter filed a timely Notice of Appeal/Petition and Brief in Support of Appeal with EEOC seeking a review of the Final Order issued by MSPB.

12. By Decision dated February 10, 2016, EEOC concurred with the decision of the MSPB Final Order. Consequently, Mr. Geter was afforded no further right of administrative appeal. Instead, Mr. Geter was permitted to file the instant action within thirty (30) calendar days after his receipt of the Decision.

## FACTS COMMON TO ALL COUNTS

13. Plaintiff began working for GPO in 2002 as a Grade 1 Helper. In this capacity, Plaintiff was required to load/unload trucks and assist the truck driver.

14. In 2003, Plaintiff was promoted to a Grade 7 – CDL. At that time, and at all times thereafter, Plaintiff was employed as a truck driver. At all relevant times, Grade 1 Helpers no longer assist truck drives.

15. In his capacity as a Grade 7 – CDL, Mr. Geter was responsible for delivering GPO's printed product to Congress and federal agencies.

16. At all relevant times, the job specifications for a Grade 7 – CDL truck driver required, *inter alia,* the ability to load and unload by hand cartons weighing up to 50 pounds.

17. Beginning in 2003 and continuing, Plaintiff received outstanding job performance evaluations.

18. On or about August 17, 2010, Plaintiff was injured while driving a GPO truck. Subsequent to that date, Mr. Geter reported more aggravation of his spine and pain in his back.

19. On or about August 23, 2010, an injured Mr. Geter declined to follow a directive from his supervisor to drive a truck. As a result, Mr. Geter was placed on three hours leave without pay and improperly faced corrective action.

20. Concerning the August 2010 injury, Mr. Geter was diagnosed with a Strain of Back, Lumbar Region by Dr. Hampton Jackson, an orthopaedic surgeon, on or about November 5, 2010. An MRI study showed an annular tear at L4-5.

21. Mr. Geter's August 2010 injury would have been prevented had the recommendations of his physician regarding an earlier injury been followed.

22. Accordingly, on November 19, 2010, Mr. Geter filed a formal complaint with EEO alleging discrimination on the basis of a disability concerning a previous work-related injury. In particular, Mr. Geter had injured his back in 2009, and was out of work until he returned in August 2010.

23. Mr. Geter's November 2010 EEO complaint was accepted on July 25, 2011 to include whether he was subjected to harassment (non-sexual) and unfair conditions of employment on the basis of retaliation and disability. Among his assertions, Mr. Geter alleged that his supervisors at GPO made their own independent evaluation of his medical condition, and that GPO management refused to deal in good faith regarding his request for reasonable accommodation for his disabling condition.

24. Mr. Geter further alleged that on September 1, 2010, during a meeting with management, he learned that management had ignored his medical restrictions.

25. In that EEO proceeding, GPO management acknowledged that it followed the limitations prescribed by physicians regarding four other employees who had medical restrictions.

Case 1:16-cv-00482-APM Document 1 Filed 03/11/16 Page 4 of 13

26. In July 2010, Mr. Geter's doctor, Dr. Jackson, had issued an Orthopaedic Consultation Report stating that Mr. Geter should be on light duty and should not lift anything heavier than 15 pounds. Dr. Jackson also recommended that the restriction on Mr. Geter's ability to lift continue for a minimum of six months. GPO was provided a copy of this report.

27. Despite the recommendation from Dr. Jackson, Mr. Geter's supervisor at the time, Mr. Gerald Simms, did not comply with the instructions concerning Mr. Geter. Instead, Mr. Simms directed Mr. Geter to drive a truck on August 17, 2010 (including pulling and lifting his 290 pound body weight to get into the truck) – thereby causing injury to Mr. Geter.

28. Plaintiff informed GPO management of his August 2010 injury and was placed on continuation of pay for 45 days under GPO's Worker's Compensation Program.

29. On or about March 18, 2011, Mr. Geter was seen by Dr. Robert Smith, another orthopaedic surgeon scheduled by the U. S. Department of Labor, Office of Workers Compensation Program ("OWCP"). Dr. Smith confirmed that Mr. Geter had a sprain of the lower back directly related to his August 2010 work incident. Dr. Smith believed that Mr. Geter was at maximum medical improvement.

30. Dr. Jackson disagreed with Dr. Smith's conclusion.

31. After Dr. Jackson passed away (at the beginning of 2012), Mr. Geter continued his pain management and medication through Kaiser Permanente.

32. By letter dated October 31, 2011, and while Mr. Geter continued to be seen by doctors concerning his August 17, 2010 injury, Mr. Robinson proposed Mr. Geter's removal.

33. Effective April 13, 2012, Mr. Geter was removed from GPO.

34. Mr. Geter contested his removal. By Initial Decision dated December 6, 2012, MSPB reversed GPO's action and reinstated Mr. Geter. Though reinstated, Mr. Geter was placed

in a non-duty pay status (administrative leave), and was barred from GPO premises by letter dated January 30, 2013.

35. While awaiting the Initial Decision, a purported "independent medical evaluation" was performed by Dr. David Dorin on or about September 14, 2012. Dr. Dorin stated that Mr. Geter was able to lift weights "of no more than 30 pounds …"

36. Dr. Dorin opined that Mr. Geter's restrictions were permanent and that Mr. Geter was unable to perform his usual job. However, Dr. Dorin failed to inquire into, and address the consequences of, the medications for which Mr. Geter was prescribed.

37. Dr. Dorin suggested that a "helper assigned" to Mr. Geter do the heavy lifting. However, in September 2012 and extending to the present, GPO no longer offered "helpers" to assist truck drivers.

38. After receiving a copy of Dr. Dorin's examination, Mr. Geter's supervisor ordered him to return to work or be terminated from his employment.

39. During that time, and continuing to the present, Mr. Geter has maintained a daily prescription for the narcotic opiate oxycodone to assist with his pain management. Oxycodone can impair a person's ability to drive.

40. As such, Mr. Geter could not return to driving a truck in September 2012.

41. On numerous occasions, Mr. Geter informed GPO of this ongoing restriction.

42. After the Board reinstated Mr. Geter, GPO intended to again seek his removal for the same alleged misconduct.

43. In fact, Mr. Geter's former position had already been announced and filled.

44. However, GPO management received notice that OWCP had issued a decision finding that Mr. Geter was "able to drive a truck and lift weights of no more than 30 pounds."

45. Because of a critical need for delivery drivers, GPO management decided to rescind the proposed removal and required Mr. Geter to report to work.

46. The information from OWCP on which GPO relied was the recommendations from Dr. Dorin that Mr. Geter was restricted to lifting no more than 30 pounds and presumed the availability and assistance of a helper. The effects of Mr. Geter's daily use of Oxycodone remained unaddressed by GPO.

47. By letter dated November 21, 2013, Mr. Geter was recalled from paid administrative leave and directed by GPO to report for duty on November 25, 2013.

48. On the morning of November 25, Mr. Geter was still using Oxycodone to treat his medical condition and was unable to drive a truck. In addition, he was still limited to lifting no more than 30 pounds. GPO was aware of both limitations. Rather than be assigned light duty or given something else to do, Mr. Geter was sent home on paid administrative leave.

49. GPO should have sent Mr. Geter to obtain a fitness for duty test before it tried to put him back into the commercial driver job because the medical evidence supported Mr. Geter's position that it would have been dangerous for him and the general public if he were put back into the commercial driver job.

50. By letter dated December 16, 2013, GPO acknowledged that Mr. Geter was requesting a reasonable accommodation when he verbally requested a transfer during a return to work meeting on November 25, 2013.

51. On December 23, 2013, Mr. Geter called Mr. Robinson and advised that Mr. Geter believed that his request for a reasonable accommodation had already been submitted, and that Mr. Geter would provide his medical reports. In addition, Mr. Geter advised of his belief that

OWCP had also submitted medical documentation supporting his request for a reasonable accommodation.

52. Mr. Robinson did not provide Mr. Geter with any additional directive or timeframe in which any additional information needed to be furnished.

53. Mr. Geter requested a reasonable accommodation to a light duty position, but GPO did not engage in the interactive process. Upon information and belief, other positions that did not require a CDL were available as well.

54. Instead of accommodating Mr. Geter, GPO released Mr. Geter to full duty even though he did not meet the GPO requirements for the job. Mr. Geter was directed to report to work on January 2, 2014.

55. Mr. Geter reported to work as directed, but he was denied entrance to the building. Mr. Geter was directed to return on January 3, 2014.

56. On January 3, 2014, allegedly because of a lack of a CDL, Mr. Robinson sent Mr. Geter home on administrative leave.

57. Before Mr. Geter was afforded time to complete any additional directives, he received notice proposing his removal from GPO by letter dated January 29, 2014.

58. At the beginning of 2014, Mr. Geter filed an EEO Complaint alleging discrimination based on disability (physical) and reprisal (prior EEO activity). Counseling was first sought on January 31, 2014, and his first interview occurred on February 20, 2014.

59. On April 10, 2014, the Agency removed Mr. Geter from his position as a Motor Vehicle Operator, allegedly for the failure to possess a valid CDL and failure to perform the essential functions of his position.

60. Other GPO workers that were injured on/off the job were given light duty office work (such as work in the office) and not work on the trucks.

61. Other GPO workers that have had problems obtaining and/or maintaining a CDL or driver's license were not terminated. Only Mr. Geter was placed on full duty.

62. On or about July 1, 2014, a physician's certificate from Kaiser Permanente confirmed that Mr. Geter still suffered back injury and continued to limit his activities to "no driving/operating heavy equipment."

## Count I
### Violation of the Civil Rights Act of 1964

63. Paragraphs 1-62 above are hereby incorporated by reference as if set forth fully herein.

64. By and through its conduct, Defendant violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against Plaintiff on the basis of his disability.

65. As detailed above, Plaintiff is a member of a protected group.

66. Defendant has discriminated against Plaintiff in the termination of his employment on the basis of his protected group status (disability), in violation of Title VII.

67. There is no legitimate, non-discriminatory reason for GPO's actions. Any purported reason offered by GPO is pre-textual to mask unlawful discrimination and retaliation.

68. As a direct and proximate result of Defendant's conduct, Mr. Geter has sustained injuries and damages.

## Count II
### Retaliation

69. Paragraphs 1-62 above are hereby incorporated by reference as if set forth fully herein.

70. By filing his EEO Complaint in November 2010, Mr. Geter engaged in protected activity.

71. GPO officials and/or management, including but not limited to Mr. Simms and Mr. Robinson, knew of, and participated in, the protected activity.

72. As a result of Mr. Geter pursuing a protected activity, he was subjected to adverse employment action taken by GPO which was retaliatory.

73. As set forth above, Defendant has retaliated against Plaintiff, *inter alia,* by failing to provide reasonable accommodation and terminating his employment on the basis of his having participated in the EEO process by filing a complaint alleging discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq.* as amended.

74. A genuine nexus exists between the retaliation and the adverse employment action suffered by Mr. Geter.

75. Defendant's actions toward Plaintiff, who engaged in protected activity, constitutes a violation of 29 C.F.R. 1614 and Title VII and the Rehabilitation Act.

76. As a direct and proximate result of Defendant's conduct, Mr. Geter has sustained injuries and damages.

## Count III
### Violation of the Rehabilitation Act of 1973

77. Paragraphs 1-62 above are hereby incorporated by reference as if set forth fully herein.

78. The Rehabilitation Act and its implementing regulations require that GPO administer programs and/or activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. 28 C.F.R. §41.51 and 45 C.F.R. §84.4.

79. Mr. Geter is a "disabled/handicapped" individual as defined under 29 U.S.C. §705.

80. As set forth above, Plaintiff has been denied and excluded from the benefits of Defendant's program/activity, and his needs remained unsatisfied.

81. By and through its conduct, Defendant violated the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.*

82. As a direct and proximate result of Defendant's conduct, Mr. Geter has sustained injuries and damages.

### Count IV
### Violation of Americans With Disabilities Act
### 42 U.S.C. §12111 *et seq.*

83. Paragraphs 1-62 above are hereby incorporated by reference as if set forth fully herein.

84. At the time of Defendant's unlawful discriminatory conduct, Mr. Geter was a qualified individual with a disability as defined under 42 U.S.C. §12131(2).

85. Defendant had knowledge regarding Mr. Geter's medical condition.

86. Plaintiff was denied, and Defendant failed to offer, a reasonable accommodation based upon Mr. Geter's disability, which was known to Defendant.

87. Defendant received Plaintiff's request for reasonable accommodation, namely to be provided a job consistent with his medical limitations.

88. GPO is an agency is required to make reasonable accommodations for the known physical and mental limitations of an otherwise qualified individual with a disability unless GPO can show that accommodation would cause an undue hardship.

89. Defendant refused to provide reasonable accommodation to Plaintiff.

90. With a reasonable accommodation, Mr. Geter could perform his duties.

91. Mr. Geter's request for a reasonable accommodation did not impose an undue hardship upon Defendant.

92. By and through its conduct, Defendant violated Title I of the Americans with Disabilities Act.

93. As a direct and proximate result of Defendant's conduct, Mr. Geter has sustained injuries and damages.

**WHEREFORE**, Plaintiff demands judgment on all counts and seeks $300,000.00, or such other amount as is awarded by a jury, consisting of lost wages, benefits, reinstatement or front pay, pain and suffering, emotional distress, mental anguish, interest calculated at the prevailing rate, as well as court costs and reasonable attorney's fees, the amount of tax on the verdict, and any such other relief as the court deems just and fair.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

By: /s/ Alan Lescht

Alan Lescht, Esquire (Bar #441691)
Alan Lescht and Associates, P.C.
1050 17th Street, N.W.
Suite 400
Washington, D.C. 20035
(202) 463-6036 (tel.)
(202) 463-6067 (fax)
alan.lescht@leschtlaw.com
*Counsel for Plaintiff*

Dated: March 11, 2016