UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| HENRY GETER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-0482 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 15, 16, 33 |
| | : | | |
| UNITED STATES GOVERNMENT PUBLISHING OFFICE, | : : | | |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS;
DENYING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

### I. INTRODUCTION

Plaintiff, Mr. Henry Geter, formerly worked at the United States Government Publishing Office (GPO). This Court has already resolved one lawsuit by Mr. Geter against the GPO concerning claims arising out of his employment. *See generally Geter v. Gov't Publ'g Office* (*Geter I*), No. 13-916, 2016 WL 3526909, at *11 (D.D.C. June 23, 2016).[1] In the instant action, Mr. Geter now claims that the GPO failed to accommodate his disability and discriminated against him by failing to provide him with appropriate work, and retaliated against him for engaging in protected activities by firing him.

The GPO moved for dismissal or, in the alternative, summary judgment, and Mr. Geter subsequently moved to amend his complaint. The GPO opposes the proposed amendment as

---

[1] This Court's Memorandum Opinion in *Geter I* is also available in the record for this matter at ECF No. 32-6.

futile. Because the Court concludes that its prior decision does not preclude Mr. Geter's current claims, Mr. Geter's proposed amendments are not futile and the Court grants leave to amend. The GPO's motion to dismiss or, in the alternative, for summary judgment, is therefore denied as moot.

## II. BACKGROUND

The Court discusses only the background relevant to the instant motions. Mr. Geter began working at the GPO in 2002, and eventually worked as a truck driver. Redline Proposed 2d Am. Compl. ¶ 14, ECF No. 33-1; *Geter I*, No. 13-916, 2016 WL 3526909, at *2 (D.D.C. June 23, 2016). In 2009, Mr. Geter injured his back. Redline Proposed 2d Am. Compl. ¶ 18; *Geter I* at *2. According to Mr. Geter, his injury prevented him from driving, both because the act of driving would aggravate his back, and because he was prescribed narcotic pain killers that impaired his ability to drive. *See, e.g.*, Redline Proposed 2d Am. Compl. ¶¶ 19, 24–26, 27, 47.

After Mr. Geter's back injury, his relationship with the GPO became contentious. According to Mr. Geter, the GPO failed to comply with his medical restrictions and otherwise violated his rights. This Court has adjudicated a previous round of disputes between Mr. Geter and the GPO. *See generally Geter I*. The Court briefly summarizes the relevant facts and results of *Geter I*.

The complaint in *Geter I*, filed in June of 2013, included claims for race and age discrimination, intentional infliction of mental harm, creation of a retaliatory hostile work environment, failure to accommodate, and retaliatory discrimination. *See generally Geter I*. For its current purposes, the Court need not exhaustively describe each of these claims. The claims for failure to accommodate and retaliatory discrimination, however, merit brief discussion. Both claims were based on "the events of August 17, 2010," when Mr. Geter's supervisor ordered him to drive a truck, which allegedly violated his medical restrictions and injured him. *Geter I* at

*3–4. Those events formed the nucleus of Mr. Geter's informal counseling and formal discrimination complaint at the GPO's equal employment opportunity office in late 2010, and eventually of his claim for failure to accommodate and retaliation in *Geter I*. *Id.* at *4.

The Court had some difficulty construing Mr. Geter's failure to accommodate claim in *Geter I*, but eventually characterized Mr. Geter's allegation as that "the GPO gave [Mr.] Geter a reasonable accommodation by placing him on light duty but the GPO failed to adhere to it" "based solely upon [Mr.] Geter's EEOC filing in October 2010." *Id.* at *7–8. After analyzing this claim, the Court concluded in *Geter I* that it failed "because [Mr.] Geter failed to show that he is a qualified individual under the ADA" and granted the GPO summary judgment. *Id.* at *1. In *Geter I*, this Court also rejected Mr. Geter's retaliation claim on causation grounds because "[Mr.] Geter failed to provide adequate support for his claim that his [protected activities] caused [his supervisors] to retaliate against him by requiring him to drive a GPO truck in August 2010." *Id.* at *13.

After the complaint in *Geter I* was filed in June of 2013, friction between Mr. Geter and the GPO continued. According to Mr. Geter, he was called back to work from paid administrative leave in November of 2013. Letter from Ginger Thomas to Henry Geter (Nov. 21, 2013), ECF No. 32-25 ("You are hereby directed to report for duty on November 25, 2013."); Redline Proposed 2d Am. Compl. ¶ 46. On November 25, 2013, Mr. Geter accordingly met with his supervisors at work. 2d Geter Aff. ¶ 1, ECF No. 32-9. At that meeting, Mr. Geter alleges that he was sent back home again because he was unable to drive a truck due to his limits on lifting and painkiller use, but the GPO argues that he was sent home because he did not have a valid commercial driver's license (CDL). Redline Proposed 2d Am. Compl. ¶¶ 46–48; 2d Geter Aff.

¶ 2, ECF No. 32-9;[2] Letter from Ginger Thomas to Henry Geter (Nov. 25, 2013), ECF No. 32-27 ("While you have reported for work as instructed, you have indicated . . .that you do not have a valid [CDL]. . . . As a result, we are sending you home until you are able to report for work, provide a valid [CDL], and perform all of the duties and responsibilities of your position.").

Mr. Geter also alleges that he asked for reassignment to a different job as a reasonable accommodation at the November 25 meeting. 2d Geter Aff. ¶ 4, ECF No. 32-9; Redline Proposed 2d Am. Compl. ¶ 51; Robinson Mem. (Nov. 25, 2013), ECF No. 32-23 (summarizing the events of the November 25, 2013 meeting as including "Mr. Geter went to talk about his medical conditions and that he would like to be placed in another section and be left alone"). Some evidence drawn from GPO sources also indicates that Mr. Geter discussed a possible transfer. Letter from Gregory Robinson to Henry Geter (Dec. 16, 2013), ECF No. 32-24 (noting that in the November 25, 2013 meeting "[Mr. Geter] alleged that [he] had suffered injury to [his] back and also that [he] would like to request a transfer" but explaining that "[i]f it is in fact [Mr. Geter's] desire to seek a reasonable accommodation, [Mr. Geter] need[s] to inform me specifically what accommodation/s [he] [is] seeking. In addition, [he] must provide medical documentation detailing [his] condition . . . consistent with GPO Instruction 650.16, *Procedure for Processing Requests for Reasonable Accommodations*"); Robinson Mem. (Nov. 25, 2013), ECF No. 32-23 (stating that, at the November 25 meeting, "Mr. Geter went to talk about his medical conditions and that he would like to be placed in another section and left alone"). In response to the letter, Mr. Geter alleges that he called his section chief on December 23, 2013 and reiterated his request for a reasonable accommodation. 2d Geter Aff. ¶ 7, ECF No. 32-9;

---

[2] The same affidavit appears as ECF No. 32-9 and ECF No. 32-26. The Court cites exclusively to ECF No. 32-9.

4

Redline Proposed 2d Am. Compl. ¶ 52. A memorandum written by Mr. Geter's section chief recalls a phone call on December 23, but states that Mr. Geter disclaimed any request for a reasonable accommodation other than a chair. Robinson Mem. (Jan. 8, 2014), ECF No. 32-11 (stating that, during a phone call on December 23, 2013, "Mr. Geter inquired about the Request for Reasonable Accommodations. As I explained the process to him, Mr. Geter informed me that he was not going to apply for Reasonable Accommodations" except for access to a chair).

Mr. Geter was not reassigned to a different position, and after being called in and sent home again, the GPO proposed Mr. Geter's removal from his job in January of 2014. Letter from James Petty to Henry Geter (Jan. 29, 2014), ECF No. 16-3. The GPO claimed that it sought to remove Mr. Geter because he lacked a valid CDL. Redline Proposed 2d Am. Compl. ¶ 6; Letter from Robin R. Bilger to Henry Geter (Apr. 10, 2014), ECF No. 16-4. Mr. Geter's removal took effect in April of 2014. Redline Proposed 2d Am. Compl. ¶ 6; Letter from Robin R. Bilger to Henry Geter (Apr. 10, 2014), ECF No. 16-4.

Mr. Geter challenged his removal administratively, but the Merit Systems Protection Board (MSPB) affirmed the GPO in December of 2014 and reaffirmed its findings in July of 2015. Redline Proposed 2d Am. Compl. ¶¶ 7–10; Final Order of MSPB (July 15, 2015), ECF No. 16-7. Mr. Geter appealed the MSPB's decision to the EEOC in August of 2015, but the EEOC also ruled against Mr. Geter in February of 2016. Redline Proposed 2d Am. Compl. ¶¶ 11–12; Decision of EEOC (Feb. 10, 2016), ECF No. 16-8.

After the unfavorable decision by the EEOC, Mr. Geter brought the instant action. His initial complaint alleged discrimination claims under Title VII, retaliation and failure to accommodate claims under Title VII and the Rehabilitation Act, and failure to accommodate claims under the ADA. *See generally* Compl., ECF No. 1. Before a responsive pleading was

filed, Mr. Geter amended his complaint to allege violations of the Rehabilitaion Act and Title VII instead of ADA claims. *See generally* Am. Compl., ECF No. 3.

The GPO moved for the Court to either dismiss the case or grant the GPO summary judgment. *See generally* Def.'s Mot. Dismiss or Alt. Mot. Summ. J. (Def.'s MTD & MSJ), ECF No. 15.[3] In part, the GPO argued that dismissal was appropriate because the GPO is a "legislative instrumentality of Congress . . . not subject to the Rehab[ilitation] Act" and Mr. Geter therefore should have brought ADA claims instead. Def.'s MTD & MSJ at 1. Mr. Geter opposed the GPO's motion, *see* Pl.'s Mem. P. & A. Supp. Pl.'s Opp'n Def.'s Mot. (Pl.'s Opp'n), ECF No. 32, and also moved for leave to file a second amended complaint, *see* Mot. Leave File 2d Am. Compl. (Pl.'s Mot. Amend), ECF No. 33. Mr. Geter explained that he sought leave to amend because "Plaintiff's prior counsel mistakenly substituted [ADA claims] with the Rehabilitation Act." Pl.'s Mot. Amend at 3; *see also* Pl.'s Opp'n at 15 ("For some strange reason, Plaintiff's predecessor counsel substituted Plaintiff's ADA claims for claims under the Rehabilitation Act . . ."). The proposed second amended complaint is substantially the same as the original complaint, but returns to pleading ADA claims instead of Rehabilitation Act claims, and clarifies the protected conduct that Mr. Geter alleges led to the supposed retaliation. *See generally* Redline Proposed 2d Am. Compl. The proposed second amended complaint also removes references to Title VII. *See generally* Redline Proposed 2d Am. Compl. The GPO opposed Mr.

---

[3] The same document docketed at ECF No. 15 as Defendant's motion to dismiss is docketed at ECF No. 16 as Defendant's motion for summary judgment. The Court cites exclusively to ECF No. 15.

Geter's motion for leave to amend, Def.'s Reply Supp. MTD & MSJ and Opp'n Pl.'s Mot. Amend (Def.'s Reply & Opp'n), ECF No. 35,[4] and all motions are now ripe for decision.

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure permit a party to amend a pleading by leave of the court if more than 21 days have passed after a responsive pleading was filed. Fed. R. Civ. P. 15(a)(2). "The grant or denial of leave to amend is committed to the sound discretion of the district court." *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012) (citation omitted). However, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), which "severely restrict[s]" the court's discretion to deny leave to amend and dismiss, *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1084 (D.C. Cir. 1998) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). Courts have also recognized a "policy in favor of hearing cases on their merits" that weighs in favor of permitting amendments. *Id.*

The Court may deny leave to amend if the proposed amendment would be futile. *BEG Investments, LLC v. Alberti*, 85 F. Supp. 3d 13, 23 (D.D.C. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) and *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)). An amendment would be futile if the amended complaint "could not withstand a motion to dismiss." *Id.* "Generally, under Rule 15(a) the non-movant bears the burden of persuasion that a motion to amend should be denied." *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP*, No. 10-0454, 2012 WL 8466139, at *11 (D.D.C. Feb. 2, 2012) (citing *Gudavich v. District of*

---

[4] The same document docketed at ECF No. 35 as Defendant's reply supporting its motion to dismiss or for summary judgment is also docketed at ECF No. 36 as Defendant's opposition to Plaintiff's motion for leave to file a second amended complaint. The Court cites exclusively to ECF No. 35.

7

*Columbia*, 22 F. App'x 17, 18 (D.C. Cir. 2001) and *Dove v. Wash. Metro. Area Transit Auth.*, 221 F.R.D. 246, 247 (D.D.C. 2004)).

## IV. DISCUSSION

The Court begins its analysis with Mr. Geter's motion to amend his complaint. The GPO argues that the Court should deny Mr. Geter's motion because claim preclusion renders the proposed second amended complaint futile, the amendments would radically change the scope of the complaint, and the proposed claims are futile because they would not survive a motion for summary judgment. *See generally* Def.'s Reply & Opp'n, ECF No. 35. The Court concludes that claim preclusion does not bar Mr. Geter's proposed second amended complaint, and that the amendments do not radically alter the scope of the complaint. The Court declines to apply the summary judgment standard in analyzing a motion to amend, and defers the substantive questions until subsequent summary judgment briefing.[5] Because the Court grants Mr. Geter's

---

[5] The Court questions if immediate summary judgment briefing would be fruitful for two reasons. First, the record contains contradictory evidence on several important points, which may require a credibility judgment from the Court. For example, it is disputed if Mr. Geter requested a transfer to a different job as a reasonable accommodation. *Compare, e.g.*, 2d Geter Aff. ¶ 7, ECF No. 32-9 ("On December 23, 2013, I made a second request for a reasonable accommodation . . . . I told Mr. Robinson that I wanted to be transferred to a desk position . . . ."), *with* Robinson Mem. (Jan. 8, 2014), ECF No. 32-11 (stating that, during a phone call on December 23, 2013, "Mr. Geter inquired about the Request for Reasonable Accommodations. As I explained the process to him, Mr. Geter informed me that he was not going to apply for Reasonable Accommodations" except to request a chair).

Second, special caution is required before granting summary judgment for defendants in discrimination cases. *See Woodruff v. Peters*, 482 F.3d 521, 526 (D.C. Cir. 2007) ("[E]mployers rarely maintain records directly evidencing discrimination, an added measure of rigor, or caution, is appropriate in applying this standard to motions for summary judgment." (internal quotation marks and citations omitted)); *McWay v. LaHood*, 269 F.R.D. 35, 37–38 (D.D.C. 2010) ("[T]he D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution." (citing *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C. Cir. 1997), *overturned on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc) and *Johnson v. Dig. Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993)). In addition, courts must exercise caution in granting summary

motion to file a second amended complaint, the GPO's motion to dismiss or, in the alternative, for summary judgment is moot.

### A. Claim Preclusion Does Not Render the Proposed Second Amended Complaint Futile

The GPO argues that the claims in the proposed second amended complaint are barred by claim preclusion, or res judicata, because of this Court's decision in *Geter I*. *See* Def.'s Reply & Opp'n at 3–4 (arguing that the claims of the proposed *second amended* complaint are barred by claim preclusion); *see also* Def.'s MTD & MSJ at 8–16, ECF No. 15 (arguing that the claims of the *amended* complaint are barred by claim preclusion).

Claim preclusion "holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004). Claim preclusion operates only when the first lawsuit "(1) involv[ed] the same claims or cause of action, (2) between the same parties or their privies, and (3) [resulted in] a final, valid judgment on the merits, (4) by a court of competent

---

judgment before discovery has been taken. *See Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (holding that summary judgment "ordinarily 'is proper only after the plaintiff has been given adequate time for discovery'" (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988))); *Kemp v. Eiland*, 139 F. Supp. 3d 329, 336 (D.D.C. 2015) ("Summary judgment is often inappropriate when the parties have not yet engaged in discovery. The D.C. Circuit has repeatedly cautioned that 'summary judgment is premature unless all parties have "had a full opportunity to conduct discovery."'" (collecting cases)).

In cases—like this one—that both involve discrimination claims and have not reached the discovery stage, courts are yet more hesitant to grant summary judgment for defendants. *See Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) ("More recently, in *Chappell–Johnson v. Powell*, 440 F.3d 484 (D.C. Cir. 2006), the court concluded that the district court abused its discretion by granting summary judgment in a Title VII case where the plaintiff had been afforded no discovery, citing cautioning instruction from the Supreme Court against premature grants of summary judgment . . . ."); *Hawkins v. Donovan*, 269 F.R.D. 6, 7 (D.D.C. 2010) ("[T]he D.C. Circuit has cautioned that Title VII cases ordinarily cannot be resolved based on an administrative record and that plaintiffs are therefore generally entitled to take discovery that might reveal, for example, motivations that 'lie at the heart of [] discrimination claims.'" (quoting *Ikossi*, 516 F.3d at 1045–46)); *see also Williams v. Shinseki*, 161 F. Supp. 3d 77, 85 (D.D.C. 2011).

jurisdiction." *Gresham v. District of Columbia*, 66 F. Supp. 3d 178, 187 (D.D.C. 2014) (quoting *Porter v. Shah*, 606 F.3d 809, 813–14 (D.C. Cir. 2010)).

The dispute here centers on the first issue—whether the instant action and *Geter I* involve the same claims or causes of action. "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Apotex*, 393 F.3d at 217 (quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)). To determine whether two claims share a common nucleus of facts, the court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)). The Court therefore compares the claims in the proposed second amended complaint and in *Geter I*.

The proposed second amended complaint includes two counts—first, a claim that the GPO violated the ADA by denying Mr. Geter a reasonable accommodation; and second, a claim that the GPO violated the ADA by terminating Mr. Geter's employment in retaliation for his protected activities of requesting a reasonable accommodation, filing EEO complaints, and filing a lawsuit. Redline Proposed 2d Am. Compl. ¶¶ 65–70, ECF No. 33-1. The GPO argues that the instant failure to accommodate claim is precluded by the ADA claims in *Geter I* for failure to accommodate, and that the instant claim for retaliatory termination is precluded by the ADA claims in *Geter I* for retaliatory discrimination.[6] The Court addresses each in turn.

Although both *Geter I* and the proposed second amended complaint involve ADA claims for failure to accommodate, the nucleus of facts in each claim is distinct. This Court concluded in

---

[6] *Geter I* also included claims for race and age discrimination, intentional infliction of mental harm, and a retaliatory hostile work environment, *Geter I*, No. 13-916, 2016 WL 3526909, at *1 (D.D.C. June 23, 2016), that the GPO does not argue affect the preclusion analysis here.

10

*Geter I* that "[b]ecause he can only raise administratively exhausted claims, . . . the ADA discrimination claim '*is based solely upon [Mr.] Geter's EEOC filing in October 2010.*'" *Geter I*, No. 13-916, 2016 WL 3526909, at *7 (D.D.C. June 23, 2016) (emphasis added) (citation omitted). That EEOC filing complained about an event in August of 2010 when Mr. Geter's supervisors ordered him to drive. EEO Counseling Report, *Geter I*, No. 13-cv-916, ECF No. 35-27. In contrast, the proposed second amended complaint alleges that the GPO failed to accommodate Mr. Geter by failing to reassign him.

Similarly, although *Geter I* and the proposed second amended complaint both involve retaliation claims, they are based on different factual occurrences. The retaliatory act at issue in *Geter I* was the allegation that the GPO "require[ed] [Mr. Geter] to drive a GPO truck in August 2010." *Geter I*, 2016 WL 3526909, at *13. In the instant action, Mr. Geter alleges that the GPO retaliated against him by terminating him in 2014. *See* Pl.'s Opp'n at 12, ECF No. 32 ("[T]he operative facts and claims for relief in Geter II are centered on the Agency's termination of Complainant in April 2014 in violation of the ADA.").[7]

Based upon a comparison of the claims, the causes of action in *Geter I* and the proposed second amended complaint are different. Nonetheless, the GPO argues that, even if the proposed

---

[7] The GPO appears to be focused on similarities in the *cause of action* rather than the facts. For example, the GPO objects because both *Geter I* and the proposed second amended complaint include an ADA claim for failure to accommodate. *See, e.g.*, Def.'s Reply & Opp'n at 3, ECF No. 35 ("In *Geter I*, Geter claimed that the GPO . . . . fail[ed] to provide a reasonable accommodation for his disability . . . . [That] claim[], of course, undergird[s] the entirety of this action as well."). However, an identity of the causes of action occurs "when the cases are based on the same *nucleus of facts* . . . , not the legal theory on which a litigant relies." *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (emphasis added) (internal quotation marks and citations omitted). Claim preclusion does not bar a later claim based on a new factual occurrence simply because the same general cause of action would apply. This rule avoids creating a moral hazard by permitting a successful defendant to freely violate the plaintiff's rights in the future.

second amended complaint raises different claims, they should be barred because Mr. Geter *could* have raised them in *Geter I*. Def.'s Reply & Opp'n at 4 ("[T]he doctrine of *res judicata* . . . . applies to any claims—like Plaintiff's reasonable accommodation, discrimination, and retaliation claims—that could have been brought through the *Geter I* proceedings by amending that complaint."); Def.'s Reply & Opp'n at 4 ("[C]laim preclusion prevents parties from relitigating issues they raised or could have raised in a prior action on the same claim[.]" (quoting *NextWave Pers. Commc'ns Inc. v. FCC*, 254 F.3d 130, 143 (D.C. Cir. 2001))). However, the GPO's argument fails for two reasons.

First, even assuming, *arguendo*, that the new claims are part of the same transaction as the claims in *Geter I*, because the instant claims had not occurred when *Geter I* was filed, Mr. Geter was not required to raise them in *Geter I*. The filing date is the cut-off for claim preclusion. *See Drake v. FAA*, 291 F.3d 59, 66–67 (D.C. Cir. 2002) ("Res judicata does not preclude claims based on facts not yet in existence at the time of the original action. . . . The doctrine does not bar a litigant from doing in the present what he had no opportunity to do in the past."); *Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 202 (D.D.C. 2005) (concluding, in answer to "whether plaintiff was required to amend her complaint" that "plaintiff is not barred by the doctrine *of res judicata* from litigating [events that occurred after her first suit was filed]");[8] *see also Apotex*, 393 F.3d at 218 ("*Res judicata* does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit."); 18 C. Wright, A. Miller, & E. Cooper,

---

[8] Indeed, the conclusions of *Velikonja* are quite apposite here. *Velikonja* involved employment discrimination claims, and the plaintiff sought to file a second action adding additional retaliatory and discriminatory acts that occurred after the filing date of the first action. *Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 199–200 (D.D.C. 2005). The court concluded, after an extensive survey of applicable authority, that the plaintiff was not required to amend her initial complaint to add claims based on occurrences after the filing date in order to avoid claim preclusion. *Id.* at 200–04.

*Federal Practice and Procedure* § 4406, p. 158–59 (3d ed. 2016) ("There is no preclusion of a claim that was not mature at the time the first action was filed."). Here, the *Geter I* complaint was filed in June of 2013, but Mr. Geter alleges that he requested reassignment in November of 2013 and was terminated in 2014. *See generally* ECF Docket 13-cv-916. The GPO offers no authority for its suggestion that Mr. Geter should have been required to amend the complaint in *Geter I* to add the later-arising claims, and such a conclusion is contrary to the holdings of other courts in this jurisdiction. *See* Def.'s Reply & Opp'n at 4; *see also Velikonja*, 355 F. Supp. 2d at 202 ("The law in this Circuit does not require constant amendments each time plaintiff learns of a new action that could be claimed to be retaliatory or discriminatory.").

Second, even if there was such a requirement, the GPO has not shown that it was possible for Mr. Geter to add the proposed claims to *Geter I*, given the exhaustion requirements. The D.C. Circuit has clearly established that a party cannot be precluded from claims that were not available in a previous action. *See also Alford v. Providence Hosp.*, 60 F. Supp. 3d 118, 124 (D.D.C. 2014) ("[R]es judicata 'does not prevent parties from later bringing claims that would have been utterly impracticable to join in an earlier suit or those that could not have been anticipated when the first suit was filed.'" (quoting *Velikonja*, 355 F. Supp. 2d at 201)). The GPO does not dispute Mr. Geter's contention that it was required to administratively exhaust the MSPB process for appealing Mr. Geter's termination, *see* Pl.'s Opp'n at 13. The MSPB did not complete its review until July 15, 2015, Final Order of MSPB (July 15, 2015), ECF No. 16-7, after the GPO had already moved for summary judgment motion in *Geter I*, *see* Docket, *Geter I*, No. 13-cv-916 (the GPO's summary judgment motion filed July 8, 2015).[9] While *Geter I* was

---

[9] In addition, Mr. Geter subsequently appealed the MSPB's decision to the EEOC, which did not reach a determination until February of 2016. Decision of EEOC (Feb. 10, 2016), ECF No. 16-8.

13

ongoing, the parties actually sought to stay the action pending the MSPB's decision concerning Mr. Geter's 2014 removal (the source of some of the instant claims), but their motion was denied. Joint Motion to Stay, *Geter I*, No. 13-cv-916, ECF No. 27;[10] *see also* Minute Order of March 3, 2015, *Geter I*, No. 13-cv-916.[11] Accordingly, the GPO has failed to show that Mr. Geter could have brought the claims proposed in the second amended complaint in *Geter I*. Claim preclusion therefore does not bar Mr. Geter's second amended complaint and the proposed amendment would not be futile on preclusion grounds.

### B. The Proposed Second Amended Complaint Would Not Radically Alter the Scope of the Case

In addition to arguing that the proposed second amended complaint is futile, the GPO argues that the amendment should not be permitted because it would "change the nature of [Mr. Geter's] claim entirely." Def.'s Reply & Opp'n at 15–17, ECF No. 35. As the GPO notes, a court may deny leave to amend a complaint under Federal Rule of Civil Procedure 15(a) if "the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action." *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991).

The GPO argues that Mr. Geter seeks to substantially change the scope of his claims, first, by altering his failure to accommodate claim to involve the failure to transfer to a desk job rather than failure to place on light duty, and second, by creating from whole cloth a retaliation claim. Def.'s Reply & Opp'n at 16–17.[12] Neither change is as dramatic as the GPO suggests.

---

[10] The joint motion to stay is also available in the docket for this matter as ECF No. 32-18.

[11] The minute order is also available in the docket for this matter as ECF No. 32-15.

[12] The proposed amended complaint also substitutes ADA claims for claims under Title VII and the Rehabilitation Act. *See generally* Redline Proposed 2d Am. Compl., ECF No. 33-1. The GPO does not argue that this change presents too substantial a shift in focus, perhaps

Although the proposed second amended complaint would alter the legal theories, the facts involved are essentially the same as the previous complaint. *See* Redline Proposed 2d Am. Compl. at 9, ECF No. 33-1 (retaining the fact section while changing both counts to reflect ADA claims). Mr. Geter does not seek to change the parties to the action or significantly expand the facts at issue.

As to the GPO's concerns about Mr. Geter's failure to accommodate claim, the prior version of the complaint was not limited to only failing to place Mr. Geter on light duty. None of the changes in the proposed second amended complaint involve adding a discussion of a desk job or removing a discussion of light duty, likely because both state in general that the GPO "den[ied] [Mr. Geter] reasonable accommodations for his disability." *See* Redline Proposed 2d Am. Compl. at 9; *see also* Redline Proposed 2d Am. Compl. ¶ 51 (both versions state that Mr. Geter "requested a transfer" as a reasonable accommodation). It thus appears that the GPO actually takes issue with the clarification contained in Mr. Geter's opposition to its motion to dismiss, which explains that one of the reasonable accommodations Mr. Geter alleges he was denied was transfer to a desk job. *See, e.g.*, Pl.'s Opp'n at 26 ("Plaintiff did request reassignment to a vacant desk position."). However, the Court finds that Mr. Geter's claims regarding failure to transfer him to a different job were encompassed in the original complaint, most notably in the section entitle "Requests for Reasonable Accommodations and GPO's Response." *See* Redline Proposed 2d Am. Compl. ¶ 54 (stating that Mr. Geter believes "other positions that did not require a CDL were available as well").[13]

---

because—as Mr. Geter notes—the legal standards used to analyze claims under the Rehabilitation Act and the ADA are the same. Pl.'s Reply Supp. Am. at 3, ECF No. 37.

[13] It is unclear if either the current or proposed second amended complaint also asserts a claim based on the GPO's alleged failure to place Mr. Geter in a light duty position. *See* Redline Proposed 2d Am. Compl. ¶ 54, ECF No. 33-1 (stating that Mr. Geter "requested a reasonable

As to the retaliation claim, contrary to the GPO's argument, it is not newly created out of "whole cloth" in the proposed second amended complaint. The current complaint states under "Nature of the Case" that "Plaintiff is also alleging discrimination based retaliation for initiating an EEO complaint against the agency . . . ." Redline Proposed 2d Am. Compl. at 1. Furthermore, the second count of the current complaint stated that the GPO violated Mr. Geter's rights by "terminating Plaintiff's employment." Am. Compl. ¶ 69, ECF No. 3. The Court does not find, therefore, that Mr. Geter's clarification of the protected activities on which his retaliation claim is based rises to the level of a radical alteration to the scope of the complaint.

Finally, the GPO makes no argument that the proposed amendments will prejudice them. *See Lawrence v. Lew*, 156 F. Supp. 3d 149, 174 (D.D.C. 2016) ("Additionally, one of the most important factor[s] to consider is the possibility of prejudice to the opposing party." (internal quotation marks and citations omitted)). In fact, despite the amount of time that has passed since this case was filed, it is still in its initial stages with no discovery having been undertaken. *See* Pl.'s Reply Def.'s Opp'n Pl.'s Mot. Leave File 2d Am. Compl. (Pl.'s Reply Supp. Am.) at 5, ECF No. 37. The Court therefore finds that the proposed second amended complaint is not barred as a dramatic alteration to the scope of the case.

---

accommodation to a light duty position"). However, the Court is uncertain if such a claim could survive the issue-preclusive effect of this Court's prior decision in *Geter I*. *See* Def.'s Reply & Opp'n at 8, 18, ECF No. 35 ("Where [Mr.] Geter claims that GPO failed to provide the accommodation of placement onto light duty, this claim is directly foreclosed by Geter I."); *Geter I* at *8 ("[T]he most logical reading of plaintiff's factual allegations is that the GPO gave [Mr]. Geter a reasonable accommodation by placing him on light duty but the GPO failed to adhere to it."). However, because the parties have not fully briefed the issue preclusion issue the Court does not address it.

### C. The Court Does Not Address the GPO's Arguments for Summary Judgment

In addition to its claim preclusion arguments, the GPO argues that allowing the proposed amendments would be futile because of substantive problems with both the failure to accommodate claim and the retaliation claim. The GPO invites the Court to apply its arguments for summary judgment to the proposed second amended complaint. *See* Def.'s Reply & Opp'n at 2, ECF No. 35 ("[I]f leave [to amend the complaint] is granted, this Court should enter summary judgment in GPO's favor on each of Geter's new claims."); Def.'s Reply & Opp'n at 17–18 & n.8 ("[T]his Court should not force the Parties to engage in the fruitless exercise of briefing summary judgment again on these futile claims. Given that [Mr.] Geter has already filed an entire Opposition focused on the merits of the claims he proposed in the Second Amended Complaint, it would not prejudice him in any way to not require the Parties to engage in yet another round of summary judgment briefing on those claims.").

However, the Court is hesitant to resolve this matter absent full summary judgment briefing by the parties specifically addressing the proposed second amended complaint. The D.C. Circuit has stated that, in contrast to the well-established rule that a proposed amendment may be futile at the *motion to dismiss* standard, "[n]o precedent, however, supports the proposition that in a case such as this, in which discovery has not occurred and no summary judgment motion is pending, summary judgment provides the appropriate standard for determining whether an amendment would be futile." *Henderson v. Stanton*, 172 F.3d 919 (D.C. Cir. 1998); *see also Hamilton v. Geithner*, 616 F. Supp. 2d 49, 62 (D.D.C. 2009) ("The defendant's exhaustion argument would therefore be premature at the motion to dismiss stage, which, in turn, means that his futility argument must be rejected."). Here, Mr. Geter asserts that "there has been no discovery." Pl.'s Reply Supp. Am. at 5, ECF No. 37. Furthermore, the GPO's dispositive motion

concerning Mr. Geter's prior complaint was styled as a motion to dismiss (although it contained arguments that, in the alternative, summary judgment should be granted). *See generally* Def.'s MTD & MSJ, ECF No. 15.

The Court therefore concludes that the better course is to find as moot the GPO's motion to dismiss, or, in the alternative, for summary judgment. The parties will thus be able to more fulsomely brief the summary judgment issues in light of the second amended complaint. *See* Pl.'s Reply Supp. Am. at 15 ("To be fair, Defendant may seek to renew its motion to dismiss with different arguments if the Court grants Plaintiff's Motion for Leave to File a Second Amended Complaint."); *cf. Cloud Found., Inc. v. Salazar*, 738 F. Supp. 2d 35, 42 (D.D.C. 2010). The Court notes that, in resolving the parties' arguments here concerning claim preclusion, it takes no position on the applicability of issue preclusion.[14] Nor does the Court take a position now on whether a summary judgment motion is appropriate prior to any discovery having been taken given the conflicting testimony on important issues.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 15) is **DENIED AS MOOT**, Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED AS MOOT**, and Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 33) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 31, 2017                                                                                     RUDOLPH CONTRERAS
                                                                                                                United States District Judge

---

[14] *See supra* note 12; *see also, e.g.*, *Geter I* at *11 ("[T]he record is devoid of any request by [Mr.] Geter for reassignment to another position.").